**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:**<br><br>**A & J HOSPITALITY CORPORATION, *et al.*,**<br><br>**Debtors.**[1] | **Case No. 26-00462 (ELG)**<br><br>**Chapter 11**<br>**(Joint Administration Requested)** |

**EMERGENCY MOTION OF DEBTORS A & J HOSPITALITY CORPORATION AND ARLS LLC FOR ENTRY OF ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 363**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**" and each a "**Debtor**") in the above-captioned bankruptcy cases for which joint administration has been requested (collectively, the "**Bankruptcy Cases**" and each a "**Bankruptcy Case**"), by the undersigned proposed counsel, respectfully move (the "**Motion**") this Court pursuant to sections 361 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), Rules 4001(b), 6003 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rule(s)**"), and Local Rules 4001-1 and 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Columbia (the "**Local Rule(s)**"), for entry of an order authorizing the Debtors' use of cash collateral, the granting of certain liens as adequate protection in connection therewith, and such other and further relief as set forth in the proposed interim order attached hereto as **Exhibit A** (the "**Proposed Order**"). In support of the Motion,

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are A & J Hospitality Corporation (1956) and ARLS LLC (5660). The mailing address for the Debtors is 990 Maine Avenue, SW, Washington, D.C. 20024.

Brent C. Strickland (Bar No. 452880)
WHITEFORD, TAYLOR & PRESTON L.L.P.
8830 Stanford Blvd., Suite 400
Columbia, MD 21045
Phone: (410) 347-9402
Email: bstrickland@whitefordlaw.com

Joshua D. Stiff (admission *pro hac vice* requested)
WHITEFORD, TAYLOR & PRESTON L.L.P.
249 Central Park Avenue, Suite 300
Virginia Beach, VA 23462
Telephone: (757) 271-9751
Email: jstiff@whitefordlaw.com

*Proposed Counsel to Debtors and Debtors-in-Possession*

the Debtors rely on the *Declaration of Robert Wood in Support of Chapter 11 Voluntary Petitions and First Day Relief* (the "**First Day Declaration**")[2] filed concurrently herewith. In further support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION**

1. On September 4, 2026 (the "**Petition Date**"), the Debtors commenced the Bankruptcy Cases by filing their respective voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors continue to manage their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. As of the filing of this Motion, the subchapter V trustee (the "**Trustee**") has not yet been appointed in the Bankruptcy Cases.

3. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. To the extent that it may be determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 364, 507, 1107, and 1108 of the Bankruptcy Code.

**BACKGROUND**

6. Debtor A & J Hospitality Corporation ("**AJH**") is an event catering company serving the Washington, D.C. metropolitan community, which services include corporate and private events as well as weddings, large event and third-party vendor management, performance

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the First Day Declaration.

nutrition, and professional sports catering. Debtor ARLS LLC ("**ARLS**") is an exclusive vendor providing catering, food preparation, and retail services to The Anthem music venue located in the District Wharf in the District of Columbia. Specifically, ARLS provides artist and private event catering in addition to preparing and selling The Anthem's concessions. ARLS also operates "Frites and Greet" in conjunction with the Anthem, a french fry stand on the District Wharf located directly outside of The Anthem.

7. A full description of the Debtor's business operations and the rationale for filing these Bankruptcy Cases is set forth in the First Day Declaration.

## STATEMENT PURSUANT TO BANKRUPTCY RULE 4001(b)(1)(B)

### I. *Requested Relief*.

8. By this Motion, the Debtors seek entry of relief pursuant to section 363 of the Bankruptcy Code: (a) authorizing the Debtors' use of Cash Collateral (as defined below) pursuant to the terms of the Proposed Order and the Approved Budget (as defined below); (b) granting adequate protection to certain creditors asserting a lien or other interest in Cash Collateral in connection with the Debtor's use thereof; and (c) granting related relief. Specifically, the Debtors seek authority to use Cash Collateral to fund the continued operation of their businesses.

### II. *Entities Asserting Interest in Cash Collateral of Debtor AJH*.

9. In the ordinary course of business, the Debtor AJH, which is a corporation formed under the laws of the Commonwealth of Virginia, provides catering and similar food preparation services. These operations generate cash, accounts receivable, and other cash equivalents in which certain parties assert a lien or other interest, thus qualifying as "**Cash Collateral**" under

the Bankruptcy Code.[3]

10. Based on information and belief, as of the Petition Date, the following parties have filed a Uniform Commercial Code ("**UCC**") Financing Statement with the Virginia State Corporation Commission asserting a lien or other interest in AJH's Cash Collateral. The below parties are listed chronologically based on the filing of their respective UCC Financing Statements.

a. *CT Corporation System*. Based on information and belief, this party is a filing alias, which filed a UCC Financing Statement on July 1, 2026 (Filing No. 202507010085723) asserting a security interest in the Debtor's Cash Collateral (*e.g.*, "all accounts and proceeds"). The Debtor has not ascertained the identity of the party asserting this security interest and continues to investigate.

b. *Holly Funding LLC*. Holly Funding LLC ("**Holly Funding**") filed a UCC Financing Statement on September 4, 2025, asserting a security interest in certain of the Debtor's Cash Collateral (*e.g.*, "ALL ACCOUNTS AND PROCEEDS"). Holly Funding and AJH are party to a *Sales of Future Receipts Agreement*, dated August 21, 2025, wherein Holly Funding asserts a security interest in the "accounts" and "payment intangibles" of AJH. Based on information and belief, all amounts due and owing under the foregoing agreement have been paid in full. Holly Funding and AJH are also party to a *Sales of Future Receipts Agreement*, dated November 28, 2025, wherein Holly Funding asserts a security interest in the "accounts" and "payment intangibles" of AJH. Based on information and belief, Holly Funding asserts that, as of June 3, 2026, $98,848.00 remains due and owing under the foregoing agreement.

[3]Section 363 of the Bankruptcy Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, … whether existing before or after the commencement of" the Bankruptcy Case. 11 U.S.C. § 363(a)

c. *Capytal.com*. Capytal.com ("**Capytal**") filed a UCC Financing Statement on January 27, 2026 (Filing No. 202601270077356) asserting a security interest in the Debtor's Cash Collateral (*e.g.*, "[a]ll present and future assets"). Capytal and AJH are party to a *Revenue Purchase Agreement*, dated January 26, 2026, wherein Capytal asserts a security interest in the "accounts," "general intangibles," etc. of the AJH. Based on information and belief, Capytal asserts that, as of July 28, 2026, $111,421.60 remains due and owing under the foregoing agreement. Based further on information and belief, Capytal may also assert that AJH is party to a *Revenue Purchase Agreement*, dated January 26, 2026, between Capytal and Super Eco CA LLC.

d. *Emerald Group Holdings LLC*. Emerald Group Holdings LLC, d/b/a VitalCap Fund ("**VitalCap Fund**") filed a UCC Financing Statement on May 21, 2026 (Filing No. 202605210025841), asserting a security interest in certain of the Debtor's Cash Collateral (*e.g.*, "[a]ccounts," "[c]hattel paper," "[d]eposit accounts," and "[g]eneral intangibles"). VitalCap Fund and AJH are party to a *Standard Merchant Cash Advance Agreement*, dated January 9, 2026, wherein VitalCap Fund asserts a security interest in "all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables" of AJH, and "all proceeds" thereof. Based on information and belief, VitalCap asserts that, as of June 2, 2026, $78,166.62 remains due and owing under the foregoing agreement.

e. *CT Corporation System*. Based on information and belief, this party is a filing alias, which filed a UCC Financing Statement on June 23, 2026 (Filing No. 202606230039267) asserting a security interest in the Debtor's Cash Collateral (*e.g.*, "[a]ll accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables"). The Debtor has not ascertained the identity of the party asserting this security

interest and continues to investigate.

## III. ***Entities Asserting Interest in Cash Collateral of Debtor ARLS***.

11. In the ordinary course of business, the Debtor ARLS LLC ("**ARLS**"), which is a limited liability company formed under the laws of the Commonwealth of Virginia, provides catering, food preparation, and sale services. These operations generate Cash Collateral in which certain parties assert a lien or other interest.

12. Based on information and belief, as of the Petition Date, the following parties have filed a UCC Financing Statement with the Virginia State Corporation Commission asserting a lien or other interest in ARLS's Cash Collateral. The below parties are listed chronologically based on the filing of their respective UCC Financing Statements.

a. *U.S. Small Business Association*. The U.S. Small Business Association (the "**SBA**") filed a UCC Financing Statement on August 13, 2020 (Filing No. 202008130060079), asserting a blanket lien on the Debtor's assets, including the Debtor's Cash Collateral (*e.g.*, "[a]ll tangible and intangible property," "accounts," "general intangibles," etc.). The SBA filed a UCC Continuation Statement on July 21, 2025 (Filing No. 202507210092480). Based on information and belief, the SBA asserts that ARLS is party to an Economic Injury Disaster Loan ("**EIDL**"), SBA Loan No. 2815988209, for which $69,243.45 remains due and owing as of July 29, 2026.

b. *Secured Lender Solutions*. Based on information and belief, this party is a filing alias, which filed a UCC Financing Statement on June 5, 2025 (Filing No. 202506050026064) asserting a security interest in the Debtor's Cash Collateral (*e.g.*, "[a]ny and all assets"). The Debtor has not ascertained the identity of the party asserting this security interest and continues to investigate.

c. *CT Corporation System*. Based on information and belief, this party is a filing alias, which filed a UCC Financing Statement on July 1, 2025 (Filing No. 202507010085723) asserting a security interest in the Debtor's Cash Collateral (*e.g.*, "all accounts and proceeds"). The Debtor has not ascertained the identity of the party asserting this security interest and continues to investigate.

d. *Holly Funding LLC*. Holly Funding filed a UCC Financing Statement on September 4, 2025, asserting a security interest in certain of the Debtor's Cash Collateral (*e.g.*, "ALL ACCOUNTS AND PROCEEDS"). Holly Funding and ARLS are party to a *Sales of Future Receipts Agreement*, dated August 21, 2025, wherein Holly Funding asserts a security interest in the "accounts" and "payment intangibles" of ARLS. Based on information and belief, all amounts due and owing under the foregoing agreement have been paid in full. Holly Funding and ARLS are also party to a *Sales of Future Receipts Agreement*, dated November 28, 2025, wherein Holly Funding asserts a security interest in the "accounts" and "payment intangibles" of AJH. Based on information and belief, Holly Funding asserts that, as of June 3, 2026, $98,848.00 remains due and owing under the foregoing agreement.

e. *Capytal.com*. Capytal.com ("**Capytal**") filed a UCC Financing Statement on January 27, 2026 (Filing No. 202601270077356) asserting a security interest in the Debtor's Cash Collateral (*e.g.*, "[a]ll present and future assets"). Based on information and belief, Capytal assert that ARLS is party to a *Revenue Purchase Agreement*, dated January 26, 2026, between Capytal and AJH, as well as party to a *Revenue Purchase Agreement*, dated January 26, 2026, between Capytal and Super Eco CA LLC. Both of the foregoing agreements assert a security interest in "accounts," "general intangibles," etc.

f. *Corporation Service Company*. Based on information and belief, this party

is a filing alias, which filed a UCC Financing Statement on January 27, 2026 (Filing No. 202601270077356) asserting a security interest in the Debtor's Cash Collateral (*e.g.*, "[a]ll present and future assets"). The Debtor has not ascertained the identity of the party asserting this security interest and continues to investigate.

g. *CFG Merchant Solutions LLC*. CFG Merchant Solutions LLC ("**CFG**") filed a UCC Financing Statement on June 15, 2026, asserting a security interest in certain of the Debtor's Cash Collateral (*e.g.*, "payments received by Debtor from customers and other third-parties in exchange for Debtor's goods or services"). CFG and ARLS are party to a *Purchase Agreement*, dated April 29, 2026, wherein CFG asserts a security interest in the "accounts," "general intangibles," or "payment intangibles" of ARLS. Based on information and belief, CFG asserts that, as of May 27, 2026, $17,871.40 remains due and owing under the foregoing agreement.

## IV. *Other Entities that May Assert Interest in Cash Collateral against Debtors*.

13. The Debtors have identified the following additional parties that have not filed a UCC Financing Statement (or may have filed a UCC Financing Statement under an alias filer), but which may also assert an interest in the Debtors' Cash Collateral:

a. Forward Finance, which asserts that ARLS is liable under a revenue-based financing agreement.

b. IOU Central Inc., which asserts that AJH is liable under a *Promissory Note*, dated September 22, 2025, which agreement includes a security pledge of certain Cash Collateral (*e.g.*, "accounts," "deposit accounts," "general intangibles," etc.).

c. LG Funding LLC, which asserts that AJH is liable under a *Standard Merchant Cash Advance Agreement*, dated December 30, 2025, which agreement includes a

security pledge of certain Cash Collateral (*e.g.*, "all accounts").

d. United First LLC (d/b/a United First Capital Experts), which asserts that AJH is liable under a *Purchase and Sale of Future Receipts Agreement*, dated February 9, 2026, which agreement includes a security pledge of certain Cash Collateral (*e.g.*, "account" and "payment intangibles").

e. Web Funder LLC, which asserts that AJH and ARLS are liable under a *Future Receivables Sale and Purchase Agreement*, dated June 30, 2025, and *Future Receivables Sale and Purchase Agreement*, dated October 31, 2025, which agreements include a security pledge of certain Cash Collateral (*e.g.*, "all accounts").

**V. *Reservation of Rights*.**

14. Nothing herein shall constitute nor be construed as a waiver, discharge, or release of, or otherwise prejudice, the Debtors' rights to object to, defend against, challenge, or otherwise dispute any of the foregoing claims and interests (including, without limitation, as disclosed in paragraphs 9 through 13 of this Motion), including, without limitation, as to the validity, extent, or priority of any alleged secured claim, or the amount thereof, and the Debtors hereby expressly reserve any and all rights, claims, defenses, arguments, and interests with respect thereto.

**VI. *Cash Collateral*.**

15. As of the Petition Date, and subject to revision, Debtor AJH estimates that it holds approximately $20,000 in cash equivalents and $36,000 in accounts receivable.

16. As of the Petition Date, and subject to revision, Debtor ARLS estimates that it holds approximately $45,000 in cash equivalents and $47,000 in accounts receivable.

**VII. *Material Terms of Use*.**

17. The Debtors require the use of their Cash Collateral to continue operating their businesses in the ordinary course. Specifically, they need the use of this cash and cash equivalents to pay their operating expenses, including, without limitation, their employees (including all payroll and benefit obligations), vendors, transportation costs, fuel, utilities, insurance, taxes, other costs of goods sold and services provided (and supplies needed), and to generally and otherwise pay all obligations critical to continued business operations and the preservation of their assets.

18. The Debtors have not obtained the consent of any of the parties asserting a lien or other interest in their respective Cash Collateral; therefore, the Debtors seek authority to use Cash Collateral in accordance with section 363(c)(2) of the Bankruptcy Code.

19. The Debtors' proposed "**Approved Budget**," a copy of which is attached hereto as **Exhibit B**, sets forth the Debtors' projected cash receipts and disbursements for the nine (9)-week period following the Petition Date. The Debtors assert that the Approved Budget represents the reasonable, necessary, and foreseeable expenses to be incurred by the Debtors' business operations over the budget period. Further, the Debtors believe that the Approved Budget is an accurate reflection of their operating requirements.

20. The Debtors seek authorization to use Cash Collateral on an interim and then final basis to pay their ordinary and necessary business expenses incurred after the Petition Date in accordance with the line-items and respective dollar amounts set forth in the Approved Budget, so long as disbursements made to pay such expenses do not exceed by more than twenty percent (20%) of the dollar amount of the expenses enumerated in the Approved Budget, in the aggregate and on a cumulative basis.

21. The Debtors also seek approval of the following adequate protection provided to certain parties holding a secured claim with a validly attached and properly perfected security interest in any Cash Collateral of the Debtors (each a "**Secured Claimant**"):

a. As adequate protection against any diminution in value of their respective liens and/or security interests in Cash Collateral of Debtor AJH, AJH seeks to grant to each such Secured Claimant, pursuant to sections 361 and 363 of the Bankruptcy Code, and without the need for the execution or recordation of any security or pledge agreements, mortgages, deeds of trust, financing statements, or similar instruments, or the taking of any other action in order to validate and perfect any liens and/or security interests granted herein, a replacement lien as of the Petition Date (i) on AJH's postpetition Cash Collateral of the same type as the Secured Claimant's prepetition Cash Collateral that are or have been acquired, generated, or received by AJH after the Petition Date, (ii) to the extent that the Debtor AJH's postpetition use of the Secured Claimant's Cash Collateral results in a decrease in the value of such parties' respective interest in such Cash Collateral, and (iii) with the same priority, validity, and extent as existed in such Cash Collateral prior to the Petition Date.

b. Debtor AJH has not been able to identify either the identity of the Secured Claimant with a validly attached and properly perfected first priority security interest in AJH's Cash Collateral or the amount of such Secured Claimant's secured claim. As such, AJH has not been able to determine which of the Secured Claimant's asserting a lien or security interest in Debtor AJH's Cash Collateral are entitled to adequate protection under the Bankruptcy Code.

c. As adequate protection against any diminution in value of their respective liens and/or security interests in Cash Collateral of Debtor ARLS, ARLS seeks to grant to each such Secured Claimant, pursuant to sections 361 and 363 of the Bankruptcy Code, and without

the need for the execution or recordation of any security or pledge agreements, mortgages, deeds of trust, financing statements, or similar instruments, or the taking of any other action in order to validate and perfect any liens and/or security interests granted herein, a replacement lien as of the Petition Date (i) on ARLS's postpetition Cash Collateral of the same type as the Secured Claimant's prepetition Cash Collateral that are or have been acquired, generated, or received by ARLS after the Petition Date, (ii) to the extent that the Debtor's postpetition use of the Secured Claimant's Cash Collateral results in a decrease in the value of such parties' respective interest in such Cash Collateral, and (iii) with the same priority, validity, and extent as existed in such Cash Collateral prior to the Petition Date.

d. As further adequate protection against any diminution in value of the SBA's liens and/or security interests in Cash Collateral, Debtor ARLS also seeks authorization to pay the monthly amount of $216.39 to the SBA, which represents the monthly interest accruing on the SBA prepetition claim. ARLS proposes to make the foregoing payment to the SBA by the 10th day of each month during the Bankruptcy Cases, with the first payment for interest having accrued during the month of September 2026 due by October 10, 2026.

e. While the current estimate of Debtor ARLS's Cash Collateral does exceed the amount of the SBA's prepetition claims, ARLS has not been able to identify either the identity of the Secured Claimant with a validly attached and properly perfected, second priority security interest in AJH's Cash Collateral or the amount of such Secured Claimant's secured claim. As such, AJH has not been able to determine which of the Secured Claimant's asserting a second priority or lower lien or security interest in Debtor AJH's Cash Collateral are entitled to adequate protection under the Bankruptcy Code.

22. To be clear, nothing in the proposed relief shall waive, impair, or limit the rights

of the Debtors, creditors, or other parties-in-interest (subject to a creditor or other party in interest having proper standing granted by order of the Court) to seek to avoid, object to, or otherwise challenge: (a) the validity, enforceability, extent, priority, perfection, or amount of any claims, liens, and/or security interests alleged by any Secured Claimant; (b) the validity, enforceability, allowability, priority, secured status, or amount of any claims, whether prepetition, postpetition, secured, unsecured, or otherwise; or (c) the issues of adequate protection and asset valuation if any party raises such issues in the Debtors' bankruptcy case or otherwise.

**VIII. *Additional Disclosures*.**

23. There are no insider relationships between the Debtors and any of the creditors asserting a lien or other interest in their respective Cash Collateral.

**BASIS FOR RELIEF**

24. Section 363 of the Bankruptcy Code prohibits the use of cash collateral unless the party with an interest in the cash collateral consents thereto or the Court otherwise authorizes such use. Specifically, the Bankruptcy Code states:

> The Trustee may not use, sell or lease cash collateral … unless –
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and hearing, authorizes such use, sale or lease in accordance with the provisions in this section.

11 U.S.C. § 363(c)(2).

25. Section 363(e) of the Bankruptcy Code provides that the court may condition a debtor's postpetition use of cash collateral on secured creditors receiving "adequate protection." 11 U.S.C. § 363(e). Although "adequate protection" is not expressly defined by the Bankruptcy Code, section 361 of the Bankruptcy Code provides a non-exhaustive list of examples of

adequate protection. These include that the debtor may provide such adequate protection: (a) "to the extent that the use" of cash collateral, "or any grant of a lien under [S]ection 364" of the Bankruptcy Code, "results in a decrease in the value of such entity's interest in such property," by "mak[ing] a cash payment or periodic cash payments to such entity;" (b) by "providing to such entity an additional or replacement lien to the extent that" the use of cash collateral "results in a decrease in the value of such entity's interest in such property;" and (c) by "granting such other relief … as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."

26. Ultimately, the Court determines what constitutes sufficient adequate protection on a case-by-case basis. *See In re Braniff Airways, Inc.*, 783 F.2d 1283, 1286 (5th Cir. 1986) (stating that a determination of adequate protection is decided on a case-by-case basis, involving a consideration of the "nature of the creditor's interest in the property, the potential harm to the creditor as a result of the property's decline in value and the method of protection"); *see also In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (explaining that the "determination of whether there is adequate protection is made on a case by case basis"); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (explaining that the application of adequate protection "is left to the vagaries of each case"). Beyond those enumerated under Section 361, other forms of court-approved adequate protection include the utilization of cash collateral to preserve the value of the secured creditor's collateral. *See, e.g., In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992)).

27. The Court may authorize the Debtor's use of Cash Collateral without the consent of such secured parties upon a determination that their secured claims are adequately protected. *See In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988) (recognizing the

court merely has to "find that adequate protection exists" to authorize the use of cash collateral).

28. The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See, e.g., Beker Indus*., 58 B.R. at 736 (noting that the focus of adequate protection is the "protection of the secured creditor from diminution in the value of its collateral during the reorganization process"); *In re Carbone Cos*., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral"). Courts have consistently held that where there is no diminution in the value of the collateral, there is no need for adequate protection (including, without limitation, adequate protection payments). The following holding is illustrative:

> [T]he Court finds that the property is not depreciating in value.
>
> In consequence, the Court finds that [secured creditor] is adequately protected by the value of its collateral … The right to receive payments is a simple contract right, that supports only a claim in the bankruptcy case. There is no other adequate protection to which [secured creditor] is entitled under the Bankruptcy Code.

*In re Elmore*, 94 B.R. 670, 677 (Bankr. C.D. Cal. 1988); *see also, e.g., In re Johnson*, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (secured creditor is not impaired and is not entitled to receive adequate protection payments where value of collateral does not decline); *In re Century Inv. Fund, VII Ltd. P'ship*, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (where value of collateral appears to be stable, secured creditor is not entitled to adequate protection payments); *In re Anderson*, 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (secured creditor was required to show a necessity for adequate protection by demonstrating a decline in asset value from the petition date); *In re Kessler*, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (movants were not entitled to adequate protection payments, as there was no showing that property was depreciating in value).

Further, junior secured creditors, whose claims are found to be wholly unsecured as a consequence of the value of their collateral being entirely consumed by senior creditors, are similarly not entitled to any adequate protection. *See, e.g. In re Patriot Contr. Corp.*, 2006 Bankr. LEXIS 4988, at *11 (Bankr. D. N.J. Mar. 28, 2006) (holding that, since "under § 506(a) the amount of a secured claim is limited by the value of the collateral," and further "[b]ecause the [d]ebtor's assets [were] insufficient to fully satisfy the secured claims of" the senior secured creditor, the junior secured creditor "possess[ed] only an unsecured claim," and, "[a]s an unsecured creditor of the [d]ebtor," it was "not entitled to adequate protection").

29. As previously stated, Debtor AJH has not been able to identify either the identity of the Secured Claimant with a validly attached and properly perfected, first priority security interest in AJH's Cash Collateral or the amount of such Secured Claimant's secured claim. Since AJH has not been able to determine which of the Secured Claimants asserting a lien or security interest in Debtor AJH's Cash Collateral are entitled to adequate protection under the Bankruptcy Code, the adequate protection liens proposed for these Secured Claimants entitled to adequate protection is sufficient to adequately protect their alleged secured claims, at least during the interim period governed by the Proposed Order.

30. Based on information and belief, the SBA holds the first priority security interest in Debtor ARLS's Cash Collateral, and it is adequately protected by the replacement lien and adequate payment outlined herein. That said, similarly to Debtor AJH, ARLS has not been able to identify either the identity of the Secured Claimant with a validly attached and properly perfected, second priority security interest in AJH's Cash Collateral or the amount of such Secured Claimant's secured claim. Since AJH has not been able to determine which of the Secured Claimant's asserting a second priority or lower lien or security interest in Debtor AJH's

Cash Collateral are entitled to adequate protection under the Bankruptcy Code, the adequate protection liens proposed for these Secured Claimants entitled to adequate protection is sufficient to adequately protect their alleged secured claims, at least during the interim period governed by the Proposed Order.

31. On the whole, the adequate protection proposed herein is fair and appropriate under the circumstances of the Bankruptcy Cases. It ensures that the Debtors are able to continue using their Cash Collateral, subject to the terms and limitations set forth in the Proposed Order and Approved Budget, for the benefit of the bankruptcy estates and all parties-in-interest. If the Debtors are unable to utilize their Cash Collateral, they may be forced to shut down their business operations. Any interruption of the Debtors' businesses will severely impair the value of their estate and assets. As their value as a going concern is significantly greater than the liquidation value of their assets, the Debtors' unsecured creditors stand to receive significantly less if the Debtors' operations cease than they are projected to if the Debtors remain in business, as will occur if the Court authorizes the Debtor's proposed use of Cash Collateral. Based thereon, and further upon the representations made in the *First Day Declaration*, granting the relief requested in the Motion and set forth in the Proposed Order is (x) necessary to avoid immediate and irreparable harm to the Debtors' estates and creditors, and (y) in the best interests of the Debtors' estates and creditors.

## NO PRIOR REQUEST

32. No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, approving the relief set forth above, and

granting such other and further relief as the Court deems appropriate.

Dated: September 4, 2026

Respectfully submitted,

**A & J HOSPITALITY CORPORATION, *et al*.**

*/s/ Brent C. Strickland*
Brent C. Strickland (Bar No. 452880)
WHITEFORD, TAYLOR & PRESTON LLP
111 Rockville Pike, Suite 800
Rockville, Maryland 20850
Phone: (410) 347-9402
Facsimile: (410) 223-4302
Email: bstrickland@whitefordlaw.com

Joshua D. Stiff (admission *pro hac vice* requested)
WHITEFORD, TAYLOR & PRESTON LLP
249 Central Park Avenue, Suite 300
Virginia Beach, VA 23462
Phone: (757) 271-9751
Facsimile: (757) 271-9736
Email: jstiff@whitefordlaw.com

*Proposed Counsel to Debtors and Debtors-in-Possession*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 4, 2026, I filed a copy of the foregoing *Motion* via CM/ECF, which caused the same to be served upon all parties receiving notice thereby.

*<u>/s/ Brent C. Strickland</u>*
Brent C. Strickland