**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:**<br><br>**A & J HOSPITALITY CORPORATION, *et al*.,**<br><br>**Debtors.**[1] | **Case No. 26-00462 (ELG)**<br><br>**Chapter 11**<br>**(Joint Administration Requested)** |

**DECLARATION OF ROBERT WOOD IN SUPPORT OF**
**CHAPTER 11 VOLUNTARY PETITIONS AND FIRST DAY MOTIONS**

I, Robert Wood, hereby declare (the "**Declaration**") the following:

1. I currently serve as the President and Chief Executive Officer of A & J Hospitality Corporation ("**AJH**") and manager of ARLS LLC ("**ARLS**"), the above-captioned debtors and debtors-in-possession (together, the "**Debtors**" and each a "**Debtor**").

2. I submit this Declaration in support of the Debtors' voluntary petitions filed under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") and its First Day Motions (as defined below), and to provide information to the Court, creditors, and parties-in-interest concerning the Debtors and these chapter 11 bankruptcy cases (together, the "**Bankruptcy Cases**" and each a "**Bankruptcy Case**").

3. In my positions and roles with the Debtors, I am familiar with their respective day-to-day operations, businesses, and financial affairs. Except as otherwise indicated herein, all

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are A & J Hospitality Corporation (1956) and ARLS LLC (5660). The mailing address for the Debtors is 990 Maine Avenue, SW, Washington, D.C. 20024.

Brent C. Strickland (Bar No. 452880)
WHITEFORD, TAYLOR & PRESTON L.L.P.
8830 Stanford Blvd., Suite 400
Columbia, MD 21045
Phone: (410) 347-9402
Email: bstrickland@whitefordlaw.com

Joshua D. Stiff (admission *pro hac vice* requested)
WHITEFORD, TAYLOR & PRESTON L.L.P.
249 Central Park Avenue, Suite 300
Virginia Beach, VA 23462
Telephone: (757) 271-9751
Email: jstiff@whitefordlaw.com

*Proposed Counsel to Debtor and Debtor-in-Possession*

statements set forth in this Declaration are based upon my personal knowledge, information supplied to me by the Debtors' employees and/or professionals, my review of relevant documents, or my opinions based upon my experience and knowledge of the Debtors' operations and financial conditions and the industry in which the Debtors operate. If called upon as a witness, I could and would competently testify to the matters set forth in this Declaration.

## I. BACKGROUND OF DEBTORS AND CERTAIN EVENTS PRECEDING FILING OF CHAPTER 11 CASES

### A. General Background.

4. AJH (d/b/a EcoCaters) was founded in 2012 with a mission to provide the highest quality event catering to the Washington, D.C. metropolitan community. The company's talented chefs and event design teams work to incorporate organic ingredients and sustainable practices yielding forward-thinking, crowd-pleasing menus presented with style and sophistication. AJH's event catering includes corporate and private events as well as weddings, large event and third-party vendor management, performance nutrition, and professional sports catering. AJH is a certified "Green Caterer," a "Fair Farms" partner, and the recipient of numerous accolades for its catering services.

5. ARLS, founded in 2013, is an exclusive vendor providing catering, food preparation, and retail services to The Anthem music venue located in the District Wharf in the District of Columbia. Specifically, ARLS provides artist and private event catering in addition to preparing and selling The Anthem's concessions. ARLS also operates "Frites and Greet" in conjunction with the Anthem, a french fry stand on the District Wharf located directly outside of The Anthem.

6. I have been an executive chef since 23, and I have helmed AJH and ARLS as the Chief Executive Officer ("CEO") since 2021. Prior to assuming the role of CEO, I was executive

chef to the Debtors and their affiliates.

**B. <u>Corporate Structure and Events Leading to Bankruptcy</u>.**

7. Debtor AJH is a wholly owned subsidiary of non-debtor Wood Cooks LLC ("**<u>Wood Cooks</u>**"). Wood Cooks is the majority owner (85%) of Debtor ARLS (a minority member holds a 15% membership interest in ARLS). Wood Cooks is also the parent of wholly owned, non-debtor subsidiaries SuperFD LLC ("**<u>SuperFD</u>**") and Super Eco CA LLC ("**<u>Super Eco</u>**"), which are affiliates of the Debtors. The chart below depicts the relationship between the Debtors and their non-debtor affiliates:




* These business entities have not filed voluntary petitions for bankruptcy relief under the Bankruptcy Code.

8. Historically, the Debtors were members of an expanded company that offered: (a) catering services in the D.C. metro area (AJH); (b) catering services in the Los Angeles and San Diego, California markets (Super Eco); (c) catering and related services to professional sports teams across the nation (SuperFD); and (d) catering, concessions, and other retail services to The Anthem music venue (ARLS). At its peak, the expanded company generated gross revenues of approximately $6.5 million a year.

9. Unfortunately, the expanded company encountered financial difficulty following the acquisition of a California-based catering business in 2024, which severely underperformed. The capital required to rehabilitate the acquired business, combined with outlays related to the

purchase, placed significant stress on the expanded company's cashflows. Unable to obtain additional financing through traditional lenders, the expanded company turned to and acquired financing from the private credit market to fund the rehabilitation and continued growth. Regrettably, the onerous terms of this financing only worsened the expanded company's liquidity problems. In 2026, unable to fund and continue full operations, the expanded company began winding down both its California operations (Super Eco) and its nationwide catering services to professional sports teams (SuperFD).

10. Notwithstanding the foregoing, the Debtors' business lines in the District of Columbia remain viable and valuable going concerns. The filing of these Bankruptcy Cases is necessary to preserve the Debtors' operations in the face of significant creditor collection actions. That said, it is the Debtors' belief that, with the breathing spell afforded them by the chapter 11 process, the Debtors can stabilize their business, reorganize their operations, restructure their debt, and emerge from bankruptcy with a stronger business to the benefit of all of its creditors and parties-in-interest.

## II. <u>FACTS IN SUPPORT OF FIRST DAY MOTIONS</u>.

11. The Debtors have filed multiple motions seeking immediate or expedited relief (collectively, the "**<u>First Day Motions</u>**") to minimize the adverse effects of the Debtors' filing for chapter 11 protection and to enhance the Debtors' ability to maximize value for the benefit of their respective estates and creditors.

12. The First Day Motions include the following pleadings:

a. *Debtors' Motion for Entry of an Order Directing Joint Administration of Chapter 11 Cases* [Dkt. No. 3] (the "**<u>Joint Administration Motion</u>**");

b. *Motion of Debtors A & J Hospitality Corporation and ARLS LLC for*

*Entry of Order Authorizing (I) Payment of Wages, Compensation and Employee Benefits, (II) Maintenance of Certain Employee Benefit Programs, and (III) Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations* [Dkt. No. 4] (the "**Wages Motion**");

c. *Emergency Motion of Debtors A & J Hospitality Corporation and ARLS LLC for Entry of Order Authorizing Use of Cash Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. § 363* [Dkt. No. 6] (the "**Cash Collateral Motion**"); and

d. *Motion to Expedite Hearing on Debtors' First Day Motions* [Dkt. No. 7] (the "**Motion to Expedite**").

13. I am familiar with the contents of each First Day Motion (including the exhibits to such motions), and, if called as a witness, I could and would competently testify to the contents set forth therein.

14. I believe that the relief sought in each motion: (a) will enable the Debtors to continue their operations and preserve the value of their assets; (b) is critical to the Debtors' chapter 11 efforts; (c) best serves the interests of the Debtors' respective estates and creditors; and (d), with respect to each First Day Motion, is necessary to avoid immediate and irreparable harm for the reasons described therein.

15. It is further my belief that the relief sought in the First Day Motions is narrowly tailored and necessary to achieve the goals identified above.

16. Each of the First Day Motions are summarized below.

**A. <u>Joint Administration Motion</u>.**

17. Pursuant to the Joint Administration Motion, the Debtors seek joint administration of the Bankruptcy Cases for procedural purposes only. The Debtors are each affiliates, and I

believe that it would be far more efficient for the administration of the Bankruptcy Cases if the Court were to authorize their joint administration. I further believe that many of the motions, hearings, and other matters involved in the Bankruptcy Cases will affect multiple and/or all of the Debtors. I further believe that joint administration will reduce costs and facilitate the administrative process by avoiding the need for duplicative hearings, notices, applications, and orders. It is my understanding that the relief sought is solely procedural and is not intended to affect substantive rights.

**B. Wage Motion.**

18. By the Wage Motion, the Debtors request entry of an of Order authorizing, but not requiring, the Debtors: (a) to pay (inclusive of any prepetition amounts): (i) Base Pay Obligations in the amount of approximately $40,000; (ii) Withholding Taxes in the approximate amount of $7,500; (iii) Employer Payroll Taxes in the amount of approximately $3,400; (iv) Expense Reimbursements in the amount of approximately $900.00; and (v) Employee Benefits in the amount of approximately $1,125.00; and (b) to maintain and continue the Employee Obligations and Employee Benefits on a postpetition basis, inclusive of paying the costs associated therewith (each as defined below or in the Wage Motion, as applicable).

19. Additionally, the Debtors request that the Court authorize and direct the Banks to receive, process, honor, and pay all prepetition and post-petition checks issued or to be issued, and electronic fund transfers requested or to be requested, by the Debtors in connection with the Employee Obligations and Employee Benefits.

20. In the ordinary course of business, the Debtors incur base pay obligations (salaries and wages) and employee benefits obligations to their employees for the performance of services (the "**Base Pay Obligations**"). As of the Petition Date, the Debtors employ approximately thirty-

three (33) employees, consisting of three (3) salaried staff (excluding Chef Wood) and thirty (30) hourly employees (collectively, the "**Employees**", and each an "**Employee**"). The number of hourly employees of the Debtors fluctuates based on the demands of the businesses. As of the Petition Date, and to aid the Debtors' restructuring efforts, I have ceased drawing a salary from the Debtors. None of the Employees are members of a union.

21. The Debtors pay their Employees bi-weekly in arrears and process and fund payroll through their payroll provider Gusto. Generally speaking, the Debtors fund their payroll on the Wednesday prior to its Friday payday, which payroll is then paid out for work performed the two-week period commencing approximately eighteen (18) days prior to the payday. For example, the Debtors' last payroll prior to the Petition Date was paid on August 28, 2026, and covered the period of August 10th through August 23rd. Gusto automatically debited funds from the Debtors on Wednesday, August 26th, to fund payroll and then issued paychecks and direct deposits on Friday, August 28th. The Debtors' combined payroll averages approximately $39,376.01 per pay cycle.

22. The Debtors' next payroll cycle, which will occur postpetition, will be funded on September 9th and paid on September 11th (covering the period of August 24th through September 6th) (the "**Post-Petition Payroll**"). With respect to the Post-Petition Payroll, the Debtors estimate that the Base Pay Obligations will total approximately $40,000.

23. The Debtors are required by law to withhold from Employees' wages amounts due for federal, state, and local income taxes, as well as social security and Medicare taxes (collectively, the "**Withholding Taxes**"). The Debtors withhold such amounts from the Employees' wages and then remit the same (all through Gusto) to the appropriate taxing authorities (collectively, the "**Taxing Authorities**"). The Debtors are current on all pre-petition

obligations to remit Withholdings Taxes.

24. The Debtors are also required to make payments on account of social security and Medicare taxes, and to pay, based on a percentage of gross payroll (and subject to state-imposed limits), additional amounts to the Taxing Authorities for, among other things, state and federal unemployment insurance (collectively, the "**Employer Payroll Taxes**"). As described above, the Withholding Taxes and Employer Payroll Taxes are remitted to the appropriate Taxing Authorities on behalf of the Debtors and their Employees through Gusto. The Debtors' combined Withholding Taxes and Employer Payroll Taxes average approximately $10,756.33 per pay cycle.

25. With respect to the Post-Petition Payroll, the Debtors estimate that the Withholding Taxes will total approximately $7,500 and the Employer Payroll Taxes will total approximately $3,400.

26. The Debtors' Employees incur various expenses in the discharge of their ordinary duties, such as travel and meal expenses. Since Employees incur these expenses as part of their official duties and in furtherance of the Debtors' businesses, the Employees are reimbursed in full (the "**Expense Reimbursements**") after submission of appropriate documentation. The Debtors estimate that, as of the Petition Date, there are Expense Reimbursements currently outstanding in the approximate amount of $900.00; however, Employees may have incurred expenses before the Petition Date for which Employees have not yet submitted reimbursement requests and which may increase this amount.

27. In the ordinary course of business, the Debtors offer their Employees benefits including: (a) health insurance through CareFirst and (b) dental and vision insurance also through CareFirst (collectively, the "**Employee Benefits**"). The Debtors further offer a 401k

Plan; however, the Debtors do not provide a match.

28. The portion of the Employee Benefits covered by the Debtors costs $225 for health insurance and $25 for dental and vision insurance per employee per month, although the Debtors fund these premiums on a bi-weekly basis. The Employees pay the balance of the Employee Benefits (which are also paid on a bi-weekly basis). The Debtors' responsibility for Employee Benefits costs approximately $1,125.00 per pay cycle.

29. With respect to the Post-Petition Payroll, the Debtors estimate that the Employee Benefits will total approximately $1,125.00.

30. The Debtors deduct other involuntary amounts from Employee pay. For example, if the Debtors are served with a garnishment or judgment for an Employee, they deduct the applicable amounts and remit them to the appropriate government authority or individual. As of the Petition Date, the Debtors are current with respect to their remittances of amounts withheld from Employees.

31. I believe that, if the relief requested in the Wage Motion is not granted, the disruption and uncertainty that typically accompanies a chapter 11 filing will jeopardize the continuity and competence of their workforce. Moreover, if the Debtors fail to pay the prepetition Employee Obligations described in the Wage Motion in the ordinary course of business, its workforce will suffer extreme personal hardship and, in some cases, may be unable to pay their basic living expenses. This would have a significant negative effect on workforce morale and productivity and would risk immediate and irreparable harm to the Debtors' operations.

32. For the foregoing reasons, I believe that the relief requested in the Wage Motion is in the best interests of the Debtor's estate, its creditors, and all other parties-in-interest, and

will enable the Debtors to continue operating their businesses during the Bankruptcy Cases.

33. Accordingly, on behalf of the Debtors, I respectfully submit that the Wage Motion should be granted.

**C. Cash Collateral Motion.**

34. By the Cash Collateral Motion, the Debtors seek entry of relief pursuant to section 363 of the Bankruptcy Code: (a) authorizing the Debtors' use of Cash Collateral (as defined below) pursuant to the terms of the Proposed Order and the Approved Budget (each as defined below); (b) granting adequate protection to certain creditors asserting a lien or other interest in Cash Collateral in connection with the Debtor's use thereof; and (c) granting related relief. Specifically, the Debtors seek authority to use Cash Collateral to fund the continued operation of their businesses.

35. In the ordinary course of business, the Debtor AJH, which is a corporation formed under the laws of the Commonwealth of Virginia, provides catering and similar food preparation services. Also in the ordinary course of business, the Debtor ARLS LLC, which is a limited liability company formed under the laws of the Commonwealth of Virginia, provides catering, food preparation, and sale services. These operations generate cash, accounts receivable, and other cash equivalents in which certain parties assert a lien or other interest, thus qualifying as "**Cash Collateral**" under the Bankruptcy Code.

36. The Debtors require the use of their Cash Collateral to continue operating their businesses in the ordinary course. Specifically, they need the use of this cash and cash equivalents to pay their operating expenses, including, without limitation, their employees (including all payroll and benefit obligations), vendors, transportation costs, fuel, utilities, insurance, taxes, and other costs of goods sold and services provided (and supplies needed), and

to generally and otherwise pay all obligations critical to continued business operations and the preservation of their assets.

37. The Debtors' proposed "**Approved Budget**," a copy of which is attached as Exhibit B to the Cash Collateral Motion, sets forth the Debtors' projected cash receipts and disbursements for the nine (9)-week period following the Petition Date. The Approved Budget represents the reasonable, necessary, and foreseeable expenses to be incurred by the Debtors' business operations over the budget period. Further, the Approved Budget is an accurate reflection of their operating requirements.

38. The Debtors have requested entry of the *Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. § 363* (the "**Proposed Order**") seeking authorization to use their Cash Collateral during the interim period to be determined by the Court in accordance with and subject to the terms and provisions of the Proposed Order and Approved Budget.

39. The Debtors assert that the adequate protection proposed in the Proposed Order is fair and appropriate under the circumstances of Bankruptcy Case. It ensures that the Debtors are able to continue using Cash Collateral, subject to the terms and limitations set forth in the Proposed Order and Approved Budget, for the benefit of the bankruptcy estate and all parties-in-interest. If the Debtors are unable to utilize their Cash Collateral, the Debtors may be forced to shut down their business operations. Any interruption to the Debtors' businesses will severely impair the value of their estates and assets. Since the value of their businesses as a going concern is significantly greater than the liquidation value of their respective assets, the Debtors' unsecured creditors stand to receive significantly less if the Debtors' operations cease than they are projected to if the Debtors remain in business, as will occur if the Court authorizes the

Debtors' proposed use of Cash Collateral.

40. Based upon the foregoing, granting the relief requested in the Cash Collateral Motion and set forth in the Proposed Order is (a) necessary to avoid immediate and irreparable harm to the Debtors' estates and creditors and (b) in the best interests of the Debtors' estates and their creditors.

**D. <u>Motion to Expedite</u>.**

41. By the Motion to Expedite, the Debtors request that the time for filing objections be shortened and that an expedited hearing be scheduled on the First Day Motions for September 9, 2026, at 12:00 PM Eastern Time.

42. For the reasons set forth above, the expedited relief sought in the First Day Motions is essential: (a) to prevent substantial disruption to the normal operations of the Debtors' businesses; (b) to preserve the value of the Debtors' assets for the benefit of their respective bankruptcy estates, creditors, and parties-in-interest; and (c) to avoid immediate and irreparable harm to the Debtors and their estates.

* * *

43. In conclusion, for the reasons stated herein and in each of the foregoing motions, I respectfully request that each of the motions be granted in their entirety, together with such other and further relief as this Court deems just and proper.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September 8, 2026

*/s/ Robert Wood*
Robert Wood
President / CEO of A & J Hospitality Corporation
Manager of ARLS LLC